**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Action No.  10-cv-00656-REB

CAUGHT FISH ENTERPRISES, LLC, a Colorado limited liability company, and
METAL ROOF INNOVATIONS, LTD., a Colorado corporation,

      Plaintiffs,

v.

ACTION MANUFACTURING, LLC, a Colorado limited liability company,
RIDDELL & COMPANY, INC., a Colorado corporation, and
PAUL RIDDELL, an individual,

      Defendants.

---

**ORDER DENYING MOTION TO DISMISS COUNTERCLAIMS**
**& MOTION TO STRIKE AFFIRMATIVE DEFENSES**

---

**Blackburn, J.**

      This matter is before me on the following: (1) **Plaintiffs' Motion To Dismiss**

**Counterclaims Nos. 1 and 2 [Doc No. 53; Sealed Doc. No. 55]** [#62][1] (public entry)

[#59] (sealed document); and (2) **Plaintiffs' Motion To Strike Defendants' Affirmative**

**Defense Nos. 9 and 10 [Doc. No. 53; Sealed Doc. No. 55]** [#63] (public entry) [#60]

(sealed document), both filed July 27, 2010.  The defendants filed a response to the

motion to dismiss [#68], which response incorporates argument included in an earlier

response [#44] (public entry) [#41] (sealed document).  The plaintiff filed a reply in

support of the motion to dismiss [#70], which reply incorporates argument included in an

earlier reply [#50] (public entry) [#48] (sealed document).  The defendants filed a

---

[1]   "[#62]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

response [#69] to the motion to strike, which response incorporates argument included in an earlier response [#43] (public entry) [#40] (sealed document). The plaintiff filed a reply in support of the motion to strike [#71], which reply incorporates argument included in an earlier reply [#51] (public entry) [#49] (sealed document).  I deny both motions.

## I.  JURISDICTION

The claims at issue in this case arise under the patent laws of the United States.  I have jurisdiction over these claims under 28 U.S.C. § 1331 (federal question) and § 1338 (patent).

## II.  STANDARD OF REVIEW

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I must determine whether the allegations in the complaint are sufficient to state a claim within the meaning of Fed. R. Civ. P. 8(a).  I must accept all well-pleaded allegations of the complaint as true.  *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir. 2002).  "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Fernandez-Montes v. Allied Pilots Association*, 987 F.2d 278, 284 (5th Cir. 1993); *see also Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) ("All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true."), *cert. denied*, 123 S.Ct. 1908 (2003).  I review the challenged portion of a complaint to determine whether it "'contains enough facts to state a claim to relief that is plausible on its face.'"  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th  Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)); *see also Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009).  "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded

claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff

has a reasonable likelihood of mustering factual support for *these* claims." ***Id.***

(emphases in original).[2]   Nevertheless, the standard remains a liberal one, and "a

well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of

those facts is improbable, and that a recovery is very remote and unlikely." ***Dias v. City***

***and County of Denver***, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting ***Twombly***, 127

S.Ct. at 1965) (internal quotation marks omitted).

The motion to strike is brought under FED. R. CIV. P. 12(f).  Under Rule 12(f), a

court may strike from pleading any insufficient defense.

## III.  ANALYSIS

The plaintiffs, Caught Fish Enterprises, LLC, and Metal Roof Innovations, Ltd.,

assert two claims of patent infringement. The plaintiffs hold patents covering devices and

systems for securing various assemblies to a standing seam on a metal roof.  The

plaintiffs allege that the defendants, Action Manufacturing, LLC, Riddell and Company,

and Paul Riddell, are making, using, and selling systems for securing various assemblies

---

[2]  ***Twombly*** rejected and supplanted the "no set of facts" language of ***Conley v. Gibson***, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  The Tenth Circuit clarified the meaning of the "plausibility" standard:

> "plausibility" in this context must refer to the scope of the allegations in a complaint:  if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them.  "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."

***Robbins v. Oklahoma***, 519 F.3d 1242, 1247-48 (10th Cir. 2008) (quoting ***Twombly***, 127 S.Ct. at 1974; internal citations and footnote omitted).

to a standing seam on a metal roof.  The plaintiffs allege that these systems infringe two patents owned by the plaintiffs.  The patents are referred to as the '588 and '033 patents. The plaintiffs allege that products sold by the defendants under the names RoofClamp RCT and RoofClamp RC infringe the '588 and '033 patents.

In a previous case, the plaintiffs sued the defendants claiming infringement of the same patents, the '588 and '033 patents.  **Caught Fish Enterprises, LLC v. Action Manufacturing, LLC**, Civil Action No. 06-cv-00194 (D. Colo.) (**Caught Fish I**).  In **Caught Fish I**, the plaintiffs alleged that the defendants' products known as Snowbar and Widnbar infringed the '588 and '033 patents.  In **Caught Fish I**, the defendants asserted counterclaims alleging that the '588 and '033 patents are invalid.  Ultimately, the parties resolved **Caught Fish I** by entering into a confidential settlement and release agreement.  Based on the parties' stipulated notice of dismissal, **Caught Fish I** was dismissed with prejudice.

The plaintiffs' motion to dismiss and motion to strike are based on the terms of the **Caught Fish I** settlement agreement, which includes a confidentiality provision.  The plaintiff includes a copy of the settlement agreement with its motion to dismiss [#59] and with its motion to strike [#60], both of which were filed under seal.   In an effort to preserve the confidentiality of the settlement agreement, I describe the terms of the settlement agreement only in the most general terms.  However, I have examined the terms of the settlement agreement in detail.  Generally, the settlement agreement permits the defendants to continue to use and sell their Windbar and Snowbar products, which were the products at issue in **Caught Fish I**.  Paragraph four of the agreement contains a broad and general release of all claims arising from the **Caught Fish I** case.

The plaintiffs argue that, under the terms of the **Caught Fish I** settlement

agreement, the defendants released their claims that the '588 and '033 patents are

invalid, and they may not reassert claims of invalidity in this case, either as counterclaims

or as affirmative defenses.  Specifically, the plaintiffs contend that the defendants first

and second counterclaims, in which the defendants allege that the '588 and '033 patents

are invalid, must be dismissed based on the doctrines of issue preclusion and

contractual estoppel.  On the same bases, the plaintiffs contend that the defendants'

ninth and tenth affirmative defenses, in which the defendants allege that the '588 and

'033 patents are invalid and unenforceable, must be stricken   The defendants argue that

the terms of settlement agreement do not prevent them from asserting these

counterclaims and affirmative defenses.  This is true, the defendants contend, because

the alleged infringing products at issue in the present case are different from the alleged

infringing products at issue in *Caught Fish I*.

### A.  ISSUE PRECLUSION

> Collateral estoppel will bar a claim if four elements are met: (1) the
> issue previously decided is identical with the one presented in the action in
> question, (2) the prior action has been finally adjudicated on the merits, (3)
> the party against whom the doctrine is invoked was a party or in privity with
> a party to the prior adjudication, and (4) the party against whom the
> doctrine is raised had a full and fair opportunity to litigate the issue in the
> prior action.

*Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009).  The terms "issue preclusion" and

"collateral estoppel" are synonymous.  *Id*. n. 7.  The plaintiffs contend that, based on the

settlement and dismissal with prejudice in *Caught Fish I*, each of these elements has

been satisfied.  In the context of patent litigation, and based on the authorities discussed

below, I disagree.

In *Foster v. Hallco Mfg. Co., Inc.*, the United States Court of Appeals for the

Federal Circuit addressed this issue.  947 F.2d 469 (Fed. Cir. 1991). In a previous case

between the same parties, the parties entered into a settlement agreement in which

Foster agreed that two of the patents at issue, patents owned by Hallco, are valid and enforceable. 947 F.2d at 472. As part of the settlement, Foster obtained a nonexclusive royalty bearing license to those two patents. *Id*. The previous case was dismissed based on the settlement agreement. *Id*.

About four years later, Foster began to produce new models of the type of conveyor equipment at issue in the first case. Hallco asserted that Foster's new models infringed the two patents covered by the license agreement and demanded that Foster pay royalties under the license agreement. Foster filed suit seeking a declaration that the new models do not infringe the two patents and that the two patents are invalid. Hallco argued that, based on the previous settlement agreement in which Foster agreed that the two patents in question are valid, Foster could not assert a claim of invalidity in the second case. Addressing the effect of the prior settlement agreement in terms of issue preclusion, the court held that provisions in a consent judgment which are asserted to preclude litigation of the issue of patent validity in relation to a new claim must be construed narrowly. *Foster*, 947 F.2d at 481. The *Foster* court held also that the earlier settlement and consent judgment would operate to bar a challenge to the validity of the patents at issue in the first suit only if the accused device in the second suit was "essentially the same" as the device at issue in the first suit. *Foster*, 947 F.2d at 479 - 480. The case was remanded for a trial court determination of, *inter alia*, whether the accused devices in the first and second suits were essentially the same and a determination of the meaning of ambiguous terms in the consent decree. *Id*. at 482 - 483.

In a later case, the Federal Circuit again examined the effect of a previous settlement on new litigation between Hallco and Foster. ***Hallco Mfg. Co., Inc. v. Foster***,

256 F.3d 1290 (Fed. Cir. 2001).  In the earlier case, the district court granted summary judgment of infringement, and Hallco was left with its invalidity defenses.  *Id*. at 1293. Before those defenses were tried fully, the parties settled, with Hallco taking a non-exclusive, royalty bearing license to use the Foster patent at issue.  Based on the settlement, the case was dismissed with prejudice.  After the settlement and dismissal, Hallco re-designed its product.  The court referred to the product at issue in the first case as Hallco I and the redesigned product as Hallco II.  *Id*.  In a new case, Hallco sought a declaratory judgment that the Hallco II product did not infringe Foster's patent, and that the patent is invalid.  In response, Foster claimed, *inter alia*, that Hallco's invalidity claim was barred by the settlement in the earlier case.

The ***Hallco*** court noted that in the settlement and dismissal judgment in the earlier case, "Hallco did not reserve the right to pursue the invalidity defense in later litigation between the parties."  *Id*. at 1297.  Ultimately, the ***Hallco*** court concluded that if the Hallco I and Hallco II devices are "essentially the same or only colorably different," then Hallco is precluded from challenging validity and infringement in the latter suit.  *Id*.  On the other hand, the court held that if the Hallco I and Hallco II devices are not essentially the same, then Hallco is free to challenge validity and infringement in the latter suit.  *Id*. This is consistent with discussion in the earlier ***Foster v. Hallco Mfg. Co., Inc.*** opinion, in which the court delineates a patent claim as the same as or different from a previous claim based on whether the allegedly infringing device at issue in the latter claim is the same as or different from the device at issue in the earlier claim.  947 F.2d 469, 479 - 480 (Fed. Cir. 1991).

Given this authority, I conclude that the doctrine of issue preclusion does not bar the defendants from asserting their counterclaims of patent invalidity in this case.  In this

case, the plaintiffs allege that the allegedly infringing products of the defendants are
different from the products at issue in *Caught Fish I*, the earlier case between the
parties.  Given the patent law authority discussed above, the fact that the products at
issue in this case are alleged to be different from the products at issue in the earlier case
is determinative.  This difference demonstrates that the issue of patent validity
purportedly decided in *Caught Fish I* is different from, rather than identical to, the patent
validity issue presented in the defendants' counterclaims in this case.  Thus, this case
does not satisfy the first element of issue preclusion.  Therefore, issue preclusion is not
applicable to the defendants' counterclaims and affirmative defenses in which they assert
that the '588 and '033 patents are invalid.

## B.  CONTRACTUAL ESTOPPEL

The plaintiffs argue also that the doctrine of contractual estoppel bars the
defendants from asserting their patent invalidity counterclaims in this case.  There are
circumstances in which a settlement agreement in an earlier case can bar litigation of
patent validity in a later case, even when a substantially different device is at issue in the
later case.

> Once an accused infringer has challenged patent validity, has had an
> opportunity to conduct discovery on validity issues, and has elected to
> voluntarily dismiss the litigation with prejudice under a settlement
> agreement containing a clear and unambiguous undertaking not to
> challenge validity and/or enforceability of the patent in suit, the accused
> infringer is contractually estopped from raising any such challenge in any
> subsequent proceeding.

*Flex Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1370 (Fed. Cir. 2001).  In *Flex-Foot*, the
parties included in their previous settlement agreement a detailed and explicit agreement
by CRP not to challenge the validity of the patent "in any future litigation, arbitration, or
other proceeding. This waiver applies to any product made, used, or sold by the CRP

8

Group . . . at any time during the life of either the '363 or '913 patents." *Id*. at 1364.[3]

Based on this agreement, the *Flex-Foot* court concluded that CRP was contractually

estopped from asserting a claim of invalidity in the later litigation. *Id*.

A similar circumstance was at issue in *Diversey Lever, Inc. v. Ecolab, Inc.*, 191

F.3d 1350, 1352 (Fed. Cir. 1999).  The defendant, Ecolab, agreed in a previous

settlement agreement that it would not "directly or indirectly aid, assist or participate in

any action contesting the validity" of the patents. *Id*.  That agreement was held to bar

Ecolab from challenging the validity of the patents in any context. *Id*.

The plaintiffs contend that the *Caught Fish I* settlement agreement constitutes an

agreement by the defendants never to challenge the validity of the '588 and '033 patents

in any context and, therefore, the settlement agreement has the same effect as the

agreements in *Flex-Foot* and *Diversey Lever*.  I disagree.  The *Caught Fish I*

settlement agreement includes a broad waiver of claims arising in the previous litigation.

Particularly in the context of the previously established issue preclusion law discussed

above, I conclude that it is not reasonable to read the broad and general language of the

settlement agreement to include an agreement by the defendants never to challenge the

validity of the '588 and '033 patents in any context.  Notably, the terms of the settlement

agreement in this case do not contain anything approaching the type of clear and

unambiguous undertaking not to challenge the validity of the patents, such as those at

issue in *Flex-Foot* and *Diversey Lever*.  Therefore, I conclude that contractual estoppel

does not bar the defendants from asserting their patent invalidity counterclaims and

affirmative defenses in this case.

---

[3] Notably, the *Flex-Foot* court concluded that the agreement did not support Flex-Foot's claim that collateral estoppel applied.  238 F.3d at 1367 - 1368.  The court did not analyze the collateral estoppel issue, however.

## IV.  CONCLUSION AND ORDERS

Having reviewed the terms of the ***Caught Fish I*** settlement agreement and the applicable law, I conclude that the defendants' first and second counterclaims and ninth and tenth affirmative defenses, in which they allege that the plaintiffs' '588 and '033 patents are invalid, are not barred by the doctrine of issue preclusion or the doctrine of contractual estoppel. Therefore, I deny the plaintiffs' motion to dismiss the defendants' first and second counterclaims and the plaintiffs' motion to strike the defendants' ninth and tenth affirmative defenses.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Plaintiffs' Motion To Dismiss Counterclaims Nos. 1 and 2 [Doc No. 53; Sealed Doc. No. 55]** [#62] (public entry) [#59] (sealed document) filed July 27, 2010, is **DENIED**;

2. That the **Plaintiffs' Motion To Strike Defendants' Affirmative Defense Nos. 9 and 10 [Doc. No. 53; Sealed Doc. No. 55]** [#63] (public entry) [#60] (sealed document) filed July 27, 2010, is **DENIED**; and

3. That the earlier filed **Plaintiffs' Motion To Dismiss Counterclaims [Doc No. 25]** [#35] (public entry) [#32] (sealed document) and  **Plaintiffs' Motion to Strike Defendants' Affirmative Defense Nos. 2, 9 and 10** [#36] (public entry) [#33] (sealed document) both filed May 28, 2010, both are **DENIED** as moot.

Dated March 7, 2011, at Denver, Colorado.      **BY THE COURT:**

Robert E. Blackburn
United States District Judge